■ ROBERT RAMIREZ, Respondent, v CITY OF NEW YORK, Appellant, et al., Defendants.—In an action to recover damages for personal injuries, the defendant City of New York appeals from a judgment of the Supreme Court,

Kings County, entered December 22, 1977, which is in favor of plaintiff and against said defendant in the principal sum of $700,000, upon a jury verdict. Judgment reversed, on the law, and new trial granted, with costs to abide the event. In the early morning hours of December 1, 1973, plaintiff, Robert Ramirez, engaged in a fight with Police Officer Morris Levy. The fight ended when Levy's partner, Edward Waldman, shot Ramirez in the back. During the trial against the city for assault and negligence, there was conflicting testimony as to whether Ramirez had wielded a knife during the fight. Ramirez offered, and Trial Term received in evidence over the city's objections, the indictment charging Ramirez with assault in the second degree (Penal Law, § 120.05) arising out of the fight and his subsequent conviction for attempted assault in the third degree (Penal Law, §§ 110.00, 120.00). The indictment for second degree assault charged, *inter alia,* the use of a dangerous instrument. Only one section of the definition of third degree assault refers to the use of a dangerous instrument, and that is in connection with criminal negligence (see Penal Law, § 120.00, subd 3). The trial transcript reveals that in his summation Ramirez' attorney argued (over the city's objection) that in the criminal court Ramirez had been charged with a "weapon crime" and that since the jury in that court had found him guilty of a "non-weapon crime", "some of" the members of that jury determined that his client had carried no weapon. In the charge to the jury at the instant trial, the Trial Judge merely read the Penal Law sections pertaining to assault in the second and third degrees to the jury without explanation, telling them that he was doing it "so that you will be able to follow what the exhibits are and what the technical language in the exhibits mean in order to use them, if you see fit, in relation to the testimony, but not as proof of the facts contained therein." It is obvious that the receipt in evidence of the indictment and conviction was highly prejudicial to the city because the jury might have inferred from it—as it was urged to do by Ramirez—that the criminal court jury had determined that Ramirez did not use a knife during the fight. Not only was such a determination not binding on the city, which was not a party to the criminal trial, but the evidence in issue was not probative on the question of whether Ramirez had used a knife. The most favorable inference to Ramirez which can be drawn from the verdict at the criminal trial is that the People failed to prove the use of a knife beyond a reasonable doubt—which was not the standard at the civil trial. Furthermore, considering the definitions of assault in the third degree, it is at least possible that the criminal court jury believed that a knife had been used. Compounding the prejudice from this confusion of potential inferences is the fact that Trial Term made no effort to explain any of the factors involved, leaving it for the jury to speculate as to the significance of the conviction. Clearly, reversal and a new trial are mandated. In reversing, we note that the complaint limits Ramirez to damages of $350,000. Titone, J. P., Suozzi, Lazer and Cohalan, JJ., concur.